UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**STEVEN DIONNE SCOTT,**
    Plaintiff,

v.                                 Case No. 13-C-1297

**BRODERSEN ENTERPRISES
OF WISCONSIN/BRODERSEN
MANAGEMENT,**
    Defendant.

---

## DECISION AND ORDER

Plaintiff Steven Scott, who is representing himself, is currently incarcerated at Green Bay Correctional Institution. He filed this lawsuit pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, and I granted him leave to proceed on his claim that the defendant, Brodersen Enterprises of Wisconsin, discriminated against him on account of his sex and race. The defendant has filed a motion for summary judgment, which I consider in this order.

### I. BACKGROUND

The plaintiff is African American, Native American, and male. The defendant operates a number of Popeyes Louisiana Kitchen fast-food franchises. In April 2005, the plaintiff applied for employment at one of the defendant's stores. Shortly thereafter, the defendant hired the plaintiff as a fry cook. The plaintiff worked for the defendant without incident until May 24, 2005.

According to the allegations of the plaintiff's verified amended complaint, which I accept as true for purposes of the defendant's motion for summary judgment, *see Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996), on May 24, 2005, the plaintiff's shift

manager, an African American female, approached him while he was operating the fryers and attempted "to provoke the plaintiff to engage in an argument." Am. Compl. ¶ 2. When the plaintiff tried to ignore the shift manager, she "attempted to 'poke' the plaintiff several times in multiple parts of his body." Id. ¶ 3. The plaintiff then stopped working and told the shift manager to quit touching him. At this point, the shift manager began yelling profanity and other disrespectful comments at the plaintiff. In response, the plaintiff said that he was leaving work. As the plaintiff was exiting the store, the shift manager grabbed him and said that he could not leave because he was responsible for closing the kitchen for the night. The store manager then "slammed and banged [the plaintiff's] right hand against the bar handle of the store door." Id. ¶ 6. The plaintiff left the store and sought medical attention. He was diagnosed with a sprained wrist.

The next day, May 25, 2005, the plaintiff reported these events to his store supervisor, who was female. The supervisor told the plaintiff that she had been told that he had used obscene and abusive language in front of customers, and that he had been insubordinate and had refused to work. The supervisor also told the plaintiff that she was "unsure" about his allegation that the shift manager had assaulted him, and that "some form of an internal investigation must be conducted." Id. ¶ 9. She told the plaintiff that he would be suspended without pay until further notice, pending completion of an internal investigation. Id. ¶ 9–10.

Immediately after his suspension, the plaintiff applied for unemployment compensation. He also began looking for other jobs and found full-time employment almost immediately. Starting in June 2005, he worked full-time at the Wisconsin State

Fair. When the State Fair ended, he found full-time employment operating a forklift at a warehouse.

In August 2005, the plaintiff was arrested. He would eventually be convicted of a crime and sentenced to 40 years' imprisonment. The plaintiff has been continuously incarcerated since his arrest in August 2005.

In May 2012, while the plaintiff was incarcerated, he decided to request his personnel file from the defendant. He states that he did this because he was having problems with his wrist and wanted to know if the defendant ever performed an investigation. The plaintiff made the request under Wisconsin's Open Personnel Records Law, which grants past and present employees the right to view and copy their personnel files at least two times each calendar year. *See* Wis. Stat. § 103.13. In response to the request, the defendant mailed the plaintiff his personnel file. The defendant's cover letter reflects that it was mailed on May 16, 2012, but the plaintiff contends that he did not receive the file until much later, possibly as late as November 2012. The plaintiff attributes the delay to issues with the prison mail system.

One of the documents that the plaintiff discovered in his personnel file was an "employee incident report." *See* Aff. of Kim Curtis, Ex. A ECF No. 62-4 at 7. This document reflected that the plaintiff had been terminated from his employment with the defendant. The document contains a space to write in the "date of incident," in which May 24, 2005 was written. The document also contained the following narrative explanation of the incident: "Steven was asked to leave the store by Doris Brown manager on duty. Steven is a crew member for store 4925. Steven cursed Doris out

3

throughout the store and in the presence of guest. He is terminated." *Id.* The document was signed by the store manager.

When the plaintiff saw this document, he concluded that the store supervisor must have lied to him when she told him on May 25, 2005 that he was suspended indefinitely without pay pending the completion of an investigation. Rather, he concluded, he had been terminated immediately, and no investigation had been conducted.

On August 26, 2013, the plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and alleged that the defendant had terminated him based on his race and sex. The EEOC determined that the plaintiff's claim was untimely, as it had been filed more than 300 days after his termination. On November 15, 2013, the plaintiff commenced the present action, alleging that the defendant had terminated him on May 24, 2005 because of his race and sex. He also alleged various state-law tort claims arising out of the shift supervisor's actions that resulted in his sprained wrist. In an earlier order, I dismissed the tort claims on the ground that they were barred by Wisconsin's Worker's Compensation Act. *See* ECF No. 40 at 4.

The defendant now moves for summary judgment on two grounds. First, the defendant contends that the plaintiff's suit is untimely. Second, the defendant contends that, even if this suit is not time-barred, the plaintiff does not have enough evidence of discrimination to warrant a trial. Because I conclude that this suit is untimely, I do not address the defendant's second ground.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take evidence in the light most favorable to the non-moving party and grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Title VII of the Civil Rights Act of 1964 prohibits an employer from discharging an individual because of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Section 1981 makes it unlawful for an employer to discriminate on the basis of race or national origin when "mak[ing] and enforc[ing] contracts." 42 U.S.C. § 1981.

As a condition precedent to filing a claim under Title VII, an individual in Wisconsin must file a charge of discrimination within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e); *Frazier v. Delco Elecs. Corp.*, 263 F.3d 663, 664 (7th Cir. 2001). A person must file a lawsuit alleging wrongful termination in violation of § 1981 within four years. *See* 28 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004); *Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 668 (7th Cir. 2014). In the present case, the plaintiff did not file an EEOC charge within 300 days of his termination and did not file a lawsuit relating to the termination within four years. However, the plaintiff contends that his claims are not time barred because the "discovery rule" and/or the doctrines of equitable estoppel or equitable tolling apply.

5

The discovery rule determines the date on which the plaintiff's claim accrued, *i.e.*, the date on which the applicable limitations period began to run. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). Under the discovery rule, a claim does not accrue until the plaintiff either discovers that the defendant injured him or, through the exercise of reasonable diligence, should have discovered that the defendant injured him. *Id.* at 450, 451 (stating that under discovery rule claim accrues when plaintiff "should have discovered" that the defendant injured him); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) (holding that the limitations period for discrimination claims begins to run, under federal law, when the plaintiff knows or reasonably should know that the adverse employment action has occurred).

In the present case, the plaintiff contends that his termination on May 25, 2005 was discriminatory, and that he did not discover that he had been terminated on that date until he reviewed his personnel file in 2012. Initially, I note that, under the plaintiff's version of events (which I accept as true for purposes of this motion), he was told on May 25, 2005 that he would be suspended indefinitely without pay pending the completion of an investigation into his allegations that his shift manager had assaulted him. This supposed suspension would have itself constituted an adverse employment action under Title VII, *see Phelan v. Cook County*, 463 F.3d 773, 780–81 (7th Cir. 2006), and thus any claim based on the supposed suspension accrued on May 25, 2005. However, termination "is a more serious action than suspension." *Id.* at 781. For purposes of this motion, I assume that indefinite suspension and termination are

6

different injuries, and that therefore the plaintiff's discovery of the supposed suspension did not start the limitations period for a claim challenging the termination.

Viewing the evidence in the light most favorable to the plaintiff, I conclude that the plaintiff did not actually discover that he had been terminated, rather than merely suspended indefinitely, as of May 25, 2005, until he received his personnel file in 2012 and saw that the employee incident report described the employment action as a termination rather than a suspension. However, as noted, under the discovery rule, a claim accrues, and the limitations period begins to run, on the date that the plaintiff, through the exercise of reasonable diligence, should have discovered his injury. Thus, although the plaintiff did not actually discover that he had been terminated rather than suspended until 2012, his claims will be time barred if he should have discovered this fact more than 300 days before he contacted the EEOC (with respect to his Title VII claim) and more than four years before he commenced this suit (with respect to his § 1981 claim).

Here, I conclude that the plaintiff should have discovered his injury, at the latest, within months after he was told that he was suspended. Because the store supervisor told the plaintiff that he was suspended rather than terminated, and that there would be an investigation, it was reasonable for the plaintiff to wait some amount of time before inquiring into the status of the investigation. However, once months started to pass and the plaintiff did not hear anything, a reasonably diligent person would have started to suspect that the suspension had become a termination. At this point, the plaintiff would have had a duty to investigate further to determine if there had been an investigation and, if so, what the outcome was. *Cf. Oshiver*, 38 F.3d at 1391 (holding that reasonable

7

diligence required Title VII plaintiff to monitor status of employment application). The plaintiff does state that after he was suspended he called the corporate office several times, yet no one returned his calls. Am. Compl. ¶ 10. Although the plaintiff's making these calls demonstrates that he made some effort to find out what had happened, reasonable diligence required more of him. Specifically, after several months had passed and the defendant had not returned any of his calls, the plaintiff should have either concluded that he had been terminated or demanded that the defendant provide him with his personnel file under the Wisconsin Open Personnel Records Law. Thus, under the discovery rule, the plaintiff's Title VII claim accrued more than 300 days before he contacted the EEOC, and his § 1981 claim accrued more than four years before he commenced the present action.

The plaintiff next contends that even if his claims accrued at the time of his supposed suspension, or within several months after the supposed suspension, the doctrines of equitable estoppel and/or equitable tolling should be applied. The first of these doctrines, equitable estoppel, "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Cada*, 920 F.2d at 450–51. Here, however, the defendant did not take any steps of this sort. The plaintiff contends that the defendant's telling him that he had been suspended rather than terminated is an act that warrants application of equitable estoppel. However, that is not the kind of act that gives rise to equitable estoppel. As discussed above in the context of the discovery rule, the defendant's telling the plaintiff that he had been suspended rather than terminated postponed the date of accrual of his claims based on the termination until the plaintiff either knew or should have known that

8

in fact he had been terminated.  Equitable estoppel, on the other hand, presupposes that the plaintiff has already discovered (or should have discovered) that the defendant injured him.  It applies when the defendant takes some action that causes the plaintiff to delay filing suit based on a known injury until it is too late to do so, such as by promising not to plead the statute of limitations while the parties negotiate a possible settlement. *See id.* at 451 (explaining that efforts by the defendant to conceal an injury are within the domain of the discovery rule rather than equitable estoppel); *see also Ramirez-Carlo v. United States*, 496 F.3d 41, 48 (1st Cir. 2007) ("equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit").  So here, the defendant's telling the plaintiff that he had been suspended rather than terminated had the effect of concealing the plaintiff's injury and thus postponed the accrual of his claims for several months.  But once the claims accrued, the defendant did not make any efforts to prevent the plaintiff from suing in time.  Thus, equitable estoppel does not apply.

The second tolling doctrine, equitable tolling, "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."  *Cada*, 920 F.2d at 451.  Equitable tolling is frequently confused both with equitable estoppel and the discovery rule.  "It differs from the former in that it does not assume a wrongful—or any—effort by the defendant to prevent the plaintiff from suing."  *Id.*  "It differs from the latter in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant."  *Id.*  In the present

9

case, equitable tolling does not apply. Under the discovery rule, the plaintiff should have learned of his injury within months of the termination. Once he learned of the injury, he would have had the same information about his claim as he did when he filed the present suit in 2013. Thus, this is not a case in which the plaintiff, despite the exercise of due diligence, was unable to obtain information necessary to decide whether his known injury was caused by the defendant's wrongdoing during the limitations period.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 60) is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 31st day of May, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

10

Case 2:13-cv-01297-LA   Filed 05/31/16   Page 10 of 10   Document 72